IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KENNETH WAYNE GORDON, § | | |
| TDCJ #1122328, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. G-07-0023 | |
| § | | |
| OFFICER MOFFETT, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

State inmate Kenneth Wayne Gordon (TDCJ #1122328, former TDCJ #828264) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. Gordon appears *pro se* and *in forma pauperis*. At the Court's request, Gordon has provided a more definite statement of his claims. (Doc. # 17). After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court concludes that this case must be **dismissed** for reasons that follow.[1]

**I.     BACKGROUND**

Gordon is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") at the Stringfellow Unit in Rosharon, Texas. Gordon sues several correctional officers and supervisory officials employed by TDCJ at the Wayne Scott Unit, where Gordon was formerly assigned,

---

[1] On October 25, 2007, this case was reassigned to United States District Judge Melinda Harmon pursuant to General Order 2007-10. The case is being handled by the undersigned by agreement of the judges.

including: Officer Moffett, Sergeant Hudson, Sergeant Stephens, Major Carrillo, Warden Trinci, Captain Reese, Mr. Henry, Ms. Green, Captain Leal, and Officer Shaffner. Gordon's claims against these defendants are summarized briefly below.

Gordon was formerly assigned to the Wayne Scott Unit trusty camp. On June 6, 2006, Gordon was summoned to the sergeant's office at the trusty camp to discuss a grievance that he had filed against Officer Moffett on or about May 9, 2006. In that grievance, Gordon reportedly complained that Officer Moffett turned off the television set in the day room and would not allow the inmates to watch the Country Music Awards. Gordon claims that, while he was in the sergeant's office, Officer Moffett used excessive force against him by knocking him down to the floor. Gordon complains that Sergeant Hudson and Sergeant Stephens were present, but did nothing to prevent the assault. Gordon claims that he filed a step 1 grievance concerning the incident with Officer Moffett and that he also placed a letter to Internal Affairs in the mail on June 9, 2006. Gordon complains, however, that Major Carillo, Warden Trinci, and Captain Reese failed to properly investigate the use of force.

On July 31, 2006, Gordon reports that he was assaulted by a black inmate at the trusty camp, identified as Steven Williams. Exhibits attached to the complaint show that Gordon was charged with engaging in a fight with Williams, by striking Williams with his fists, resulting in injuries to Williams that required treatment up to first aid. After the altercation with Williams, Gordon was removed from the trusty camp and placed in "pre-hearing detention." While he was in pre-hearing detention, Gordon claims that Officer Shaffner, who works in the property room, lost or stole some of his personal property, including copies of

2

the written grievances that he filed about the incident involving Officer Moffett, as well as a letter that Gordon wrote to Internal Affairs.

Gordon was found guilty of the disciplinary charges lodged against him as a result of his fight with Offender Williams in disciplinary case #20060346444. Captain Leal presided at the disciplinary hearing. Gordon, who appears to claim that Captain Leal failed to adequately investigate the charges, reportedly received a verbal reprimand and "time served in pre-hearing detention." Gordon did not return to the trusty camp. Instead, the Unit Classification Committee voted to re-assign Gordon to another facility. Gordon was transferred to the Stringfellow Unit, where he remains in custody, in August of 2006.

Gordon claims that the above-referenced defendants violated his civil rights and he seeks relief under 42 U.S.C. § 1983. Liberally construed, Gordon's allegations raise claims of excessive force, failure to protect, false disciplinary charges, and loss or theft of personal property. Gordon seeks $1.5 million in compensatory and punitive damages. The Court concludes, however, that the complaint must be dismissed for reasons discussed below.

## II.    STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is

immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)). Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

4

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III.   DISCUSSION

#### A.   Exhaustion of Administrative Remedies

According to the complaint and more definite statement, Gordon filed a grievance against Officer Moffett and Sergeant Stephens, but did not present any of his other claims to prison officials. (Doc. # 17, at ¶ 22). Exhibits attached to the complaint reflect, however, that the Step 1 grievance that Gordon filed against Officer Moffett and Sergeant Stephens was returned for procedural deficiencies. It does not appear that Gordon re-filed the grievance in compliance with prison procedures or that he otherwise pursued available administrative remedies as required by the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), by presenting his claims for consideration by prison officials before filing suit.

Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of all administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong); *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

TDCJ has a formal two-step administrative grievance process. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id.* Step 2 grievances are reviewed at the state level. *See id.*; *Wendell*, 162 F.3d at 891. A Texas prisoner must pursue a grievance

through both steps to satisfy the exhaustion requirement. *See Johnson*, 385 F.3d at 515 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.2001)).

Because Gordon did not complete both steps of the administrative remedy process available at TDCJ, he did not exhaust his remedies as required before filing his complaint in this case. The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which demands compliance with prison procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524. By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. (citing *Booth*, 532 U.S. at 737). In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id*. (citations omitted).

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules. *See Woodford*, 548 U.S. at 97. By failing to complete the grievance procedure in place at TDCJ, Gordon has bypassed available administrative remedies. *See Carbe v. Lappin*, 492 F.3d 325,

7

238 (5th Cir. 2007). This violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion before filing suit. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"). Gordon's failure to present all of his claims properly in step 1 and step 2 of the grievance process means that he has failed to comply with prison procedures or complied with the exhaustion requirement found in § 1997e(a).

The Fifth Circuit has held that a district court "can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." *Carbe*, 492 F.3d at 328 (citing *Jones*, 127 S. Ct. at 920-91) (holding that courts can dismiss for failure to state a claim when the existence of an affirmative defense, like a statute of limitations bar, is apparent from the face of the complaint)). Because it appears clear from the pleadings that Gordon has failed to exhaust available administrative remedies before filing suit in federal court, his complaint must be dismissed for failure to state a claim upon which relief can be granted. Alternatively, Gordon's complaint fails for reasons set forth briefly below.

### B.   Excessive Force

Gordon alleges that Officer Moffett used excessive force against him by knocking him to the floor on June 6, 2006, and that Sergeant Hudson and Sergeant Stephens were present, but did nothing to help. Gordon alleges further that Major Carillo, Warden Trinci, and Captain Reese failed to properly investigate the incident. Gordon claims that these

defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In that respect, the constitution excludes from recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation and quotation omitted). To prevail on an excessive-force claim, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result. *See Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing *Hudson*, 503 U.S. at 7; and *Jackson v. Culbertson*, 984 F.2d 699 (5th Cir. 1993)); *see also Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (referencing 42 U.S.C. § 1997e(e), which precludes a civil action by a "prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury" in connection with an excessive-force claim).

Gordon fails to allege facts showing that he suffered a cognizable injury as a result of his altercation with Officer Moffett. The Fifth Circuit has emphasized that "some physical injury" is an indispensable element of an excessive-force claim. *Gomez v. Chandler*, 163 F.3d 910, 923 (5th Cir. 1999). The Fifth Circuit has explained further that the prisoner "must have suffered from the excessive force a more than *de minimis* physical injury," adding that "there is no categorical requirement that the physical injury be significant, serious, or more

9

than minor." *Id.* at 924. However defined, it is clear that some physical injury is required. As another court in this circuit has concluded, a "physical injury" in this context "is an observable or diagnosable medical condition requiring treatment by a medical care professional." *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997). In that regard, a more than *de minimis* "physical injury" is not a sore muscle, aching back, scratch, abrasion, or bruise of the type that would not otherwise force a "free world person" to seek medical treatment. *See id.*

In this case, Gordon complains that he suffered only "redness" where Officer Moffett reportedly struck him, knocking him to the floor. (Doc. # 17, at ¶ 6). Gordon, who concedes that he did not require any medical care following this incident, has demonstrated nothing more than soreness or bruising of the type that would not otherwise force a free world person to seek medical treatment. *See Luong*, 979 F. Supp. at 486. Accordingly, Gordon has not shown that he suffered a more than *de minimis* physical injury of the kind required to establish an excessive-force claim. *See id.*; *see also Siglar*, 112 F.3d at 193 (holding that a sore, bruised ear lasting for three days was *de minimis* and not sufficient to raise a valid claim for excessive force). Because Gordon has not alleged or shown that he suffered an actionable injury as a result of the incident with Officer Moffett, he fails to state a valid claim for excessive force in violation of the Eighth Amendment or to show that the other supervisory officials failed to prevent or properly investigate such a violation.

    **C.**    **Failure to Protect**

Gordon claims that the defendants failed to protect him from the assault by Offender Steven Williams that occurred on July 31, 2006. To establish a failure-to-protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). To act with deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient. *See id.*

Gordon concedes in his more definite statement that he did not receive any threat from Inmate Williams and, further, that he never reported any threat to prison officials or asserted a need for protection before the assault occurred. (Docket No. 17, at ¶ 21). Thus, Gordon appears to claim that the defendants failed in general to prevent the assault. Allegations of this sort, which rise only to the level of mere negligence, are not sufficient to state a failure-to-protect claim. *See Farmer*, 511 U.S. at 837; *see also Neals*, 59 F.3d at 533 (concluding that allegations amounting to a claim of negligence in the failure-to-protect context did not raise a non-frivolous constitutional claim); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983). Accordingly, Gordon's allegations fail to state a valid failure-to-protect claim.

**D.     False Disciplinary Conviction**

Gordon appears to claim that the disciplinary conviction entered against him by Captain Leal was false. In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

The complaint filed in this case does not reference any particular right found in the Due Process Clause. In that respect, the Due Process Clause does not include a right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Likewise, the Due Process Clause does not guarantee an inmate credit for satisfactory behavior while in prison. *Wolff*, 418 U.S. at 557; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Accordingly, any potential due process claim depends on the existence of a constitutionally protected interest created by state law.

The Supreme Court has decided that only those state-created substantive interests which "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487; *see also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995). In Texas, it is well established that only

those inmates who are eligible for mandatory supervision have a constitutional expectancy of early release under the Texas mandatory supervision scheme and a protected liberty interest in the good-time credits that they have earned. *See Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir.2000) (addressing the mandatory supervision scheme in place prior to September 1, 1996); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir.2007) (addressing the mandatory supervision scheme in place before and after September 1, 1996). Gordon indicates that he is not eligible for mandatory supervision and, moreover that he did not lose any good-time credits as a result of the prison disciplinary conviction at issue in his petition. (Doc. # 17). This is fatal to Gordon's claims.

As a result of the disciplinary proceeding against Gordon, he received a verbal reprimand, time-served in pre-hearing detention, and a change in classification status. According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The imposition of a restriction on commissary or recreation privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See Madison*, 104 F.3d at 768; *see also Sandin*, 515 U.S. at 486 (refusing to recognize a liberty interest in administrative segregation). The Fifth Circuit has also decided that reductions in a prisoner's classification status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi*, 211 F.3d at 958; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Because these sanctions do not

implicate a protected liberty interest, Gordon cannot show that he is entitled to relief from his disciplinary conviction under 42 U.S.C. § 1983.

### E.     Loss of Property

While he was in pre-hearing detention awaiting a disciplinary hearing, Gordon claims that Officer Shaffner lost or stole some of his personal property, including copies of his written grievances about the incident involving Officer Moffett and a letter that Gordon wrote to Internal Affairs.  Gordon does not allege that the property was wrongfully confiscated pursuant to prison policy.  Whether there is a negligent, or even intentional, deprivation of property by state officials that is random and unauthorized does not rise to the level of a constitutional violation if state law provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984); *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).  It is well established that Texas provides a remedy for inmates whose property has been taken or destroyed improperly.  *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996);  *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984);  *Aguilar v. Chastain*, 923 S.W.2d 740, 743-44 (Tex. Crim. App. 1996); *see also* TEX. GOV'T CODE §§ 501.007, 501.008.  Accordingly, Gordon's allegations that Officer Shaffner lost or intentionally stole his personal property fail to state a claim for which relief can be granted under 42 U.S.C. § 1983.

### IV.    **CONCLUSION AND ORDER**

Based on the foregoing, it is **ORDERED** that the complaint in this case is **DISMISSED** with prejudice for failure to state a claim.

**The Clerk is directed to provide a copy of this order to the parties. The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and (2) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED on <u>July 29th</u>, 2008.

_____
Nancy F. Atlas
United States District Judge